UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                                            **OPINION AND ORDER**

DWAYNE PULLIAM,                                               7:24-cr-00377 (PMH)

                Defendant.
----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

      Dwayne Pulliam ("Defendant") stands charged in a three-count indictment of: (1) Travel Act murder, in violation of 18 U.S.C. §§ 1952 and 2; (2) participating in a conspiracy to distribute and possess with intent to distribute crack cocaine and heroin, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846; and (3) distribution and intent to distribute crack cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2. (Doc. 39).

      Pending before the Court is Defendant's motion to suppress all evidence seized from his residence, vehicle, and cellphone. (Doc. 49, "Mot."; Doc. 49-1; Doc. 49-2; Doc. 49-3). The Government opposed the motion to suppress (Doc. 52, "Opp."), and Defendant filed reply papers (Doc. 53, "Reply"; Doc. 53-1, "Def. Aff."). The Court heard oral argument from the parties on March 27, 2025. The Government, that same day, filed a letter alerting the Court to additional legal authority (Doc. 57), which Defendant responded to on March 28, 2025 (Doc. 58).

      For the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

      On or about April 2, 2022, the Putnam County Sheriff's office began investigating the disappearance of Lori Lynn Campbell. (Doc. 1 ¶ 19). On April 7, 2022, in connection with this investigation, the Honorable Michael Caruso of the Town of Patterson Justice Court issued three search warrants for: (1) Defendant's apartment at 206 Fox Run Lane, Patterson, New York; (2)

Defendant's 2009 Honda Accord with New York registration KPC3883; and (3) Defendant's 9203 cellular phone. (Doc. 49-2, "Search Warrants"). The Search Warrants authorized law enforcement to search for evidence relating to the crime of "Kidnapping in the First Degree, in violation of [S]ection 135 of the Penal Law of the State of New York." (*Id.* at 1, 3, 5).[1]

Each search warrant issued was based on an affidavit sworn to by police officer Kevin Radovich. (*Id.*; Doc. 49-1, "Radovich Aff."). Familiarity with the content of the application for the Search Warrants is presumed for purposes of this Order. On April 8, 2022, Police officers executed a search of Defendant's residence and car. (Doc. 49-3). Police officers recovered, among other things, crack pipes and women's underwear. (*Id.* at 1). Police officers also recovered Defendant's alleged cellphone, which officers subsequently "forensic[ally] examin[ed]." (*Id.* at 2).

---

[1] A person is guilty of kidnapping in the first degree when he abducts another person and when:

1. His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct, or to refrain from engaging in particular conduct; or

2. He restrains the person abducted for a period of more than twelve hours with intent to:

    (a) Inflict physical injury upon him or violate or abuse him sexually; or
    (b) Accomplish or advance the commission of a felony; or
    (c) Terrorize him or a third person; or
    (d) Interfere with the performance of a governmental or political function; or

3. The person abducted dies during the abduction or before he is able to return or to be returned to safety. Such death shall be presumed, in a case where such person was less than sixteen years old or an incompetent person at the time of the abduction, from evidence that his parents, guardians or other lawful custodians did not see or hear from him following the termination of the abduction and prior to trial and received no reliable information during such period persuasively indicating that he was alive. In all other cases, such death shall be presumed from evidence that a person whom the person abducted would have been extremely likely to visit or communicate with during the specified period were he alive and free to do so did not see or hear from him during such period and received no reliable information during such period persuasively indicating that he was alive.

N.Y. Penal Law § 135.25.

On June 10, 2024, the indictment returned by a federal grand jury charging Defendant with the three counts described *supra* was docketed. (Doc. 39).

## **ANALYSIS**

I. <u>Standing</u>

As an initial matter, the Government argues that Defendant lacks standing to object to any of the Search Warrants. (Opp. at 12-15).[2] Because Defendant "did not submit a sworn declaration claiming ownership of or any cognizable interest in the premises, vehicle or phone identified in the Search Warrant[s]," the Government asserts he lacks standing to make the instant motion. (*Id.* at 12).

"On a motion to suppress evidence for failure to satisfy the Fourth Amendment, 'the defendant bears the burden of proving that he had a legitimate expectation of privacy.'" *United States v. Ray*, 541 F. Supp. 3d 355, 379 (S.D.N.Y. 2021) (cleaned up; quoting *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005)).[3] "To establish standing, one must demonstrate a subjective expectation of privacy in the invaded area or object that 'society is prepared to recognize as reasonable.'" *United States v. Herron*, 2 F. Supp. 3d 391, 400 (E.D.N.Y. 2014) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). "That burden ordinarily is carried by the submission of sworn declarations." *Ray*, 541 F. Supp. 3d at 379 (citing *United States v. White*, No 17-CR-00611 2018 WL 4103490, at *8 (S.D.N.Y. 2018)).

Although Defendant failed to submit an affidavit with his opening motion papers, he subsequently filed one with the Reply. (*See generally* Def. Aff.). This belatedly filed affidavit by Defendant is sufficient to satisfy his burden with respect to his apartment and car. (*See id.* ¶ 2

---

[2] Citations to specific pages of court filings on the docket correspond to the pagination generated by ECF.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

("[B]etween August, 2021 through August, 2022, I resided at and leased the apartment located at 206 Fox Run Lane, Carmel, New York[.]"); *id.* ¶ 3 ("[I]n 2022 I possessed a 2009 Honda Accord with a New York registration number KPC3883. That vehicle was also registered under my name in 2022.")). Defendant has "filed the prerequisite sworn statement[] necessary to establish [that he] had a Fourth Amendment interest" in the apartment and car subject to the search at issue here. *United States v. Brown*, 627 F. Supp. 3d 206, 219 (E.D.N.Y. 2022).

By contrast, Defendant has not established that he had a legitimate expectation of privacy, and thus standing, with respect to the cellphone searched. His affidavit does not assert that he owned the cellphone at issue. Rather, Defendant argues on Reply that he has standing to challenge searches of any items seized from his apartment and car. (Reply at 2). Put differently, Defendant argues that his right to challenge the search of the cellphone derives from his legitimate expectation of privacy in his apartment and car. But courts within this Circuit do not recognize such derivative standing. *See, e.g.*, *United States v. Conley*, 342 F. Supp. 3d 247, 268 (D. Conn. 2018) ("While [the defendant's] expectation of privacy in a legitimately borrowed vehicle is sufficient to challenge the search of the vehicle, it is not, without more, adequate for him to challenge the separate search warrants for the cell phones seized from that vehicle[.]"); *United States v. Rivera-Banchs*, No. 20-CR-06046, 2022 WL 714237, at *6 (W.D.N.Y. Mar. 10, 2022) ("Having a legitimate expectation of privacy in a particular location does not mean that an individual has a legitimate expectation of privacy in every item within that location."). Instead, "[a] defendant bears the burden of proving that he has a legitimate expectation of privacy in an object such that he can claim the protection of the Fourth Amendment in challenging the government's search of that object." *United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014). Here, Defendant, by failing to submit an affidavit establishing that the cellphone searched

belonged to him or that he had a subjective expectation of privacy in it, failed this burden. *See id.* (holding that the defendant "did not establish his standing to challenge the government's obtaining of the records [from his cellphones]" because "he did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them"); *White*, 2018 WL 4103490, at *8 ("That burden 'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.'" (quoting *United States v. Montoya-Escheverria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995))).

Accordingly, there is a sufficient factual basis to support a finding that Defendant had a legitimate expectation of privacy in the searched apartment and car to establish Fourth Amendment standing. Defendant, however, has not set forth sufficient facts that would support the conclusion that he had a legitimate expectation of privacy in the searched cellphone, and thus he lacks standing to challenge that search. In any event, as explained *infra*, Defendant's motion fails on the merits as to the apartment, car, and cellphone.

II. Probable Cause for the Search Warrants

Defendant argues that the Search Warrants were not supported by probable cause. Specifically, Defendant argues that the allegations in "the supporting affidavit" for the Search Warrants "fall far short of [1] indicating either that the crime of kidnapping occurred, or [2] that there was likely evidence of such crime at the designated locations." (Mot. at 8). The Government counters that the allegations in the supporting affidavit, taken together, "more than surpassed the low threshold for probable cause." (Opp. at 11 (quotation marks omitted)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be

5

violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Second Circuit has held that probable cause to search a [place or item] requires two factual showings: (i) 'that a crime was committed,' and (ii) 'that there is probable cause to believe that evidence of such crime is located at [or in] the [place or item].'" *United States v. Yu*, No. 22-CR-00208, 2023 WL 4687970, at *5 (E.D.N.Y. July 21, 2023) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). "Unlike the 'finely-tuned standards' for proof by a preponderance of the evidence or beyond a reasonable doubt, probable cause and reasonable suspicion are 'fluid concepts,' which 'take their substantive content from the particular contexts in which the standards are being assessed.'" *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022) (quoting *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996)). To that end, the probable cause analysis is based on the totality-of-the-circumstances. *See Illinois v. Gates*, 462 U.S. 213, 232 (1983). Moreover, "[a] judge's probable-cause determination is not overly strict." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005).

Affidavits submitted in support of a search warrant application are "presumed reliable," *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008), and the task of a court charged with deciding to issue a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place," *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (Sotomayor, J.) (quoting *Gates*, 462 U.S. at 232; ellipsis in original). When reviewing the decision to grant a warrant, given the nature of probable cause, "a reviewing court generally accords substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting [its] inquiry to whether the officer had a substantial

basis for his determination." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015); *see also Kanciper v. Lato*, 718 F. App'x 24, 27 (2d Cir. 2017) (explaining that "the duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed").

Considering the totality of the circumstances, the Court finds, first, that Judge Caruso had probable cause to find that the crime of kidnapping was committed. Officer Radovich's Affidavit detailed how Ms. Campbell had not been seen or heard from, either by her friends or neighbors, since March 28, 2022. (Radovich Aff. at 3). It detailed that Ms. Campbell had not conducted a transaction using her Chase Card or Electronic Benefits Transfer account since March 27, 2022. (*Id.* at 4). It detailed how Defendant—who was out on parole for a murder in the second-degree conviction, according to records from the New York Departments of Correction and Community Supervision —was the last person that Ms. Campbell had been seen with or contacted by phone. (*Id.* at 3). It detailed how cell-site data established that Ms. Campbell's phone was in the area of Defendant's residence on the day she went missing and how license-plate-reader data demonstrated that Defendant's and Ms. Campbell's cars were traveling together the day after her disappearance. (*Id.* at 3-4). It detailed how Defendant had misled law enforcement officials about the last time he saw Ms. Campbell. (*Id.* at 5). And it concluded, based on Officer Radovich's training, experience and knowledge of the investigation, that there was "reasonable cause to believe" that Ms. Campbell "may be the victim of violation of [Section] 135 of the Penal Law of the State of New York." (*Id.* at 6).

Taking these facts together, "it cannot be said that Judge [Caruso] lacked a substantial basis for finding probable cause" that a crime had been committed. *United States v. Saleh*, No. 10-CR-00623, 2011 WL 1210207, at *8 (S.D.N.Y. Mar. 24, 2011). This is all the more so given

that Section 135.25 of the Penal Law of the State of New York "presume[s]" that a "person abducted dies during the abduction or before he is able to return or to be returned to safety" where, like here, the "person whom the person abducted would have been extremely likely to visit or communicate with during the specified period were [s]he alive and free to do so did not see or hear from he[r] during such period and received no reliable information during such period persuasively indicating that [s]he was alive." N.Y. Penal Law § 135.25(3). (*Cf.* Radovich Aff. at 3 (third party on April 2, 2022, "reported to [a Putnam County Sheriff's] Deputy . . . that she normally talks to Lori Campbell every day" but she last spoke or heard from Ms. Campbell on March 27, 2022)).

Defendant disagrees, arguing that other, "non-criminal explanation[s]" may have accounted "for her absence." (Mot. at 12). But "a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). Defendant also argues that Officer Radovich's Affidavit neither "indicates [n]or suggests that Ms. Campbell was 'restrained' or 'abducted' as defined by the relevant statutes." (Mot. at 13). This argument if accepted, however, would hold law enforcement to an impossible standard—essentially requiring direct evidence that a crime has been committed to establish probable cause. It is well-established that probable cause may rest on "circumstantial evidence," *Ganek v. Leibowitz*, 874 F.3d 73, 87 (2d Cir. 2017) (collecting cases), and that law enforcement need only demonstrate "a probability, and not a prima facie showing, of criminal activity," *Travisano*, 724 F.2d at 346. Indeed, the Second Circuit has made clear that "probable cause does not demand evidence of every element of a crime." *Ganek*, 874 F.3d at 86. Finally, Defendant argues that the Court should disregard Defendant's statements to law enforcement. (Mot. at 12). Yet it is equally as

well-established that a probable cause finding may be supported by evidence of a defendant's "evasive or contradictory answers to questions." *Edwards v. Castro*, No. 16-CV-02383, 2018 WL 4680996, at *9 (S.D.N.Y. Sept. 28, 2018) (collecting cases).

The Court also finds that Judge Caruso had probable cause to conclude that evidence of specific criminal activity would be found in Defendant's home, car, and cellphone. A showing of a sufficient nexus between the criminal activities alleged and the area or item searched "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Here, Officer Radovich's Affidavit demonstrated, among other things, that (i) the day Ms. Campbell went missing, she contacted Defendant eight times and was seen at his apartment complex (Radovich Aff. at 3); (ii) the cell site data established that Ms. Campbell's phone was in the area of Defendant's residence on the day she went missing (*id.* at 3); (iii) license-plate-reader data demonstrated that Defendant's and Ms. Campbell's cars were traveling together the day after her disappearance (*id.* at 4); (iv) Defendant confirmed to police officers that he was involved in a sexual relationship with Ms. Campbell (*id.* at 5); and (v) that Defendant misled officers about the last time he saw Ms. Campbell (*id.*). Taken together, this affidavit demonstrated that Ms. Campbell was with Defendant at his apartment complex and called him repeatedly on the day of her disappearance. It also demonstrated that their cars traveled together the next day. Given this "proximity in time" between the alleged criminal conduct, it is a "common sense" inference that evidence of the crime of kidnapping may be found at Defendant's apartment or in his car—as Ms. Campbell was last seen with him—or in Defendant's cellphone in light of Ms. Campbell's repeated calls to Defendant. *United States v. Perez*, No. 23-CR-00092, 2025 WL 744279, at *15 (D. Conn. Mar. 7, 2025); *see also Yu*, 2023

WL 4687970, at *6 (finding a "nexus" between the criminal activity alleged and the search of defendant's residence based in part on (1) a "source placing [defendant] 'within several blocks' of the crime scene" and (2) "cell tower data placing [defendant] within approximately 3.5 miles of the crime scene").

### III. Good Faith Exception

In any case, even if probable cause for the issuance of the Search Warrants did not exist, the Court concludes that, based on the circumstances of this case, the evidence seized during the April 8, 2022 search should not be suppressed because of the "good faith exception" to the exclusionary rule. This exception to the exclusionary rule applies where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). Although the Government carries the burden of establishing objective reasonableness, there is a "presumption of reasonableness" by law enforcement officials who execute a search pursuant to a warrant. *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011); *see also Leon*, 468 U.S. at 922 ("Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." (cleaned up)); *United States v. Shafer*, No. 21-1334-CR, 2022 WL 868901, at *1 (2d Cir. Mar. 24, 2022) ("We decide whether the good-faith exception applies keeping in mind that 'most searches conducted pursuant to a warrant [are] likely [to] fall within its protection.'" (alteration in the original)). Indeed, the Supreme Court has identified only four circumstances in which law enforcement officials' acts would be objectively unreasonable.

As the Second Circuit explained, "[i]t was against this presumption of reasonableness that the Supreme Court identified four circumstances where an exception to the exclusionary rule would not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable."

*Clark*, 638 F.3d at 100 (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.1992) (citing *Leon*, 468 U.S. at 923)). Put differently, the good faith exception applies unless one of these four circumstances exist. *See United States v. Rickard*, 534 F. App'x 35, 37 (2d Cir. 2013) ("[T]he Supreme Court identified a limited number of circumstances where the good faith exception to the exclusionary rule would not apply[.]"); *United States v. Monk*, 499 F. Supp. 2d 268, 271 (E.D.N.Y. 2007) (explaining that "the good-faith exception applies unless" one of the four circumstances identified by the Supreme Court are present).

None of those circumstances are present here. There is no evidence that Judge Caruso "ha[d] been knowingly misled" or "wholly abandoned his . . . judicial role." *Id.* Nor does the factual record presented to the Court support a finding that the warrant application was "so lacking in indicia of probable cause as to render reliance upon it unreasonable" or that the "warrant [was] so facially deficient that reliance upon it is unreasonable." *Id.* To the contrary, as explained *supra*, the challenged warrant application was detailed and specific with respect to the circumstances around Ms. Campbell's disappearance as well as her contacts and communications with Defendant.

11

Accordingly, the evidence obtained during the April 8, 2022 search should not be suppressed even assuming *arguendo* that probable cause for the issuance of the Search Warrants was deemed not to exist.

## CONCLUSION

The motion to suppress is DENIED. An in-person status conference in the White Plains courthouse has been scheduled for May 6, 2025 at 9:30 a.m.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 49.

**SO ORDERED.**

Dated: White Plains, New York
       March 31, 2025

_____
Philip M. Halpern
United States District Judge