UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                          **OPINION AND ORDER**

DWAYNE PULLIAM,                                             7:24-CR-00377 (PMH)

                          Defendants.
-----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

Pending before the Court is the post-trial motion filed by Dwayne Pulliam ("Defendant"),

requesting that the Court enter an order setting aside the jury's guilty verdict as to Count One of

the Indictment pursuant to Federal Rule of Criminal Procedure 29 and enter a verdict of acquittal.

(Doc. 91).

Based upon the parties' written submissions and for the reasons set forth below,

Defendant's motion is DENIED.

## BACKGROUND

On June 10, 2024, a grand jury sitting in the Southern District of New York returned an

Indictment in this case charging Defendant with three counts: (1) Travel Act murder, in violation

of 18 U.S.C. §§ 1952 and 2; (2) participating in a conspiracy to distribute and possess with intent

to distribute cocaine base, in a form commonly known as crack, and heroin, in violation of 21

U.S.C. §§ 841(b)(1)(C) and 846; and (3) distribution and intent to distribute crack and heroin, in

violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2. (Doc. 39).

The grand jury thereafter on October 16, 2025 returned a Superseding Indictment S1 24

Cr. 377 (the "Indictment") charging Defendant with three counts: (1) Travel Act murder, in

violation of 18 U.S.C. §§ 1952 and 2 ("Count One"); (2) participating in a conspiracy to distribute

and possess with intent to distribute 28 grams and more of crack and a detectable amount of heroin,

in violation of 21 U.S.C. §§ 841(b)(1)(B), (b)(1)(C) and 846 ("Count Two"); and (3) distribution and intent to distribute crack and heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2 ("Count Three"). (Doc. 68). With respect to Count One, the Indictment charged, in pertinent part, that Defendant traveled in interstate commerce between New York and Connecticut, used cellular telephones to promote and carry on an unlawful crack cocaine business enterprise, possessed with the intent to distribute crack, and murdered Lori Lynn Campbell to further his drug business. (*Id.*).

The Court's Pretrial Scheduling Order directed the parties to, *inter alia*, meet and confer and agree, to the extent possible, on proposed *voir dire*, requests to charge, and a proposed verdict sheet. (Doc. 60). The parties submitted their joint pretrial filings on October 20, 2025 and agreed on the substantive elements of the three counts in the Indictment. (Doc. 72, Doc. 73).

After *voir dire* and jury selection on December 8, 2025, the Court heard witness testimony and received evidence over the course of the five-day trial. (*See generally* Trial Transcript, "Tr."). The Government called fifteen witnesses in its case-in-chief. Defendant then offered a stipulation as to his age after the Government rested. (Tr. at 588-589).

The Court held a charging conference on December 10, 2025. The Court charged the jury on December 11, 2025 consistent with the parties' proposed instructions and the jury retired to deliberate. On December 12, 2025, the jury returned a verdict convicting Defendant of Counts One, Two and Three in the Indictment. (*See* Dec. 12, 2025 Min. Entry). Defendant's sentencing is scheduled for May 7, 2026.

On January 30, 2026, Defendant filed his post-trial motion. (Doc. 91). On March 13, 2026, the Government opposed the motion. (Doc. 98).

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29(a) directs the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "[A] district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Berry*, No. 20-CR-00084, 2022 WL 1515397, at *3 (S.D.N.Y. May 13, 2022) (Nathan, J.)..[1] Where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

The Court, when assessing the sufficiency of the evidence supporting a guilty verdict, "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012). Therefore, a defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial "bears a heavy burden" when bringing a Rule 29(a) motion. *Id.* "[T]he evidence must be viewed in conjunction, not in isolation," *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011), "since one fact may gain color from others," *Berry*, 2022 WL 1515397, at *3. This is an "exceedingly deferential standard of review." *United States v. Pica*, 692 F.3d 79, 86 (2d Cir. 2012).

---

[1] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

3

## ANALYSIS

Defendant argues that, with respect to Count One, the government failed to prove that the murder of Campbell occurred "in furtherance of" a narcotics trafficking enterprise. (Doc. 91 at 1). Count One of the Indictment charged Defendant with violating 18 U.S.C. §§ 1952 and 2 by committing Travel Act Murder. To establish a violation of Section 1952,[2] the government was required to prove beyond a reasonable doubt that:

> First, that the defendant traveled or caused someone else to travel in interstate or used or caused someone else to use a facility in interstate commerce;
> Second, that this travel or use of an interstate facility was done with the intent to promote, manage, establish or carry on an unlawful activity;
> Third, after this interstate travel or use of an interstate facility, the defendant performed or attempted or caused another to perform or attempt a crime of violence in furtherance of this same unlawful activity; and,
> Fourth, that the victim of the violent crime died as a result of that crime.

(Tr. at 708–709).

Defendant challenges only the third element, arguing that there was insufficient evidence to prove that he killed Campbell with the specific intent "to further" his narcotics trafficking enterprise. (Doc. 91 at 8). With respect to this third element, the Court charged the jury on this aspect as the parties requested that it "must find beyond a reasonable doubt both that the defendant committed or caused to be committed murder and that he did so in order to further the unlawful activity: namely, a business enterprise involving controlled substances." (Tr. at 713-714).

---

[2] The Travel Act provides: "Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . commit any crime of violence 'to further' any unlawful activity . . . and thereafter performs or attempts to perform . . . [such] an act . . . shall be fined under this title, imprisoned . . . or both, and if death results shall be imprisoned for any term of years or for life." 18 U.S.C. § 1952(a).

4

Courts "review the statutory text, considering the 'ordinary or natural meaning' of the words chosen by Congress, as well as the 'placement and purpose' of those words 'in the statutory scheme.'" *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). Although the Second Circuit has not analyzed the meaning of "to further any unlawful activity" in connection with the Travel Act, both Defendant and the government recognize that courts within the Second Circuit have interpreted similar phrases in other statutes. For example, "[p]ossession of a firearm is in furtherance of a drug trafficking crime within the meaning of § 924(c) if there was some nexus between the firearm and the drug selling operation. [I]n furtherance, means that the gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Philippe*, 842 F. App'x 685, 688 (2d Cir. 2021); *accord United States v. Williams-Bey*, No. 20-CR-00172, 2023 WL 5286799, at *16 (D. Conn. Aug. 17, 2023) ("To possess a firearm in furtherance of a drug trafficking crime means that the firearm helped forward, advance, or promote the commission of the drug trafficking crime."); *Stinson v. United States*, No. 01-CR-6807, 2012 WL 7763805, at *7 (W.D.N.Y. Aug. 15, 2012) (same) (noting the § 924(c) jury instruction was modeled after L. Sand, *et al.*, Modern Federal Jury Instructions, Instruction 35-80, ¶ 35.12).

Similarly, a person who kills while "working in furtherance of a continuing criminal enterprise" is guilty of murder under 21 U.S.C. § 848(e)(1)(A). "[C]ourts have given th[is] phrase its commonly understood meaning, *i.e.*, working to promote or advance the interests of a continuing criminal enterprise." *United States v. Aguilar*, 585 F.3d at 657 (citing cases). In addition, a conspiracy to use a government computer unlawfully is subject to a felony enhancement if "the offense was committed in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States." 18 U.S.C. § 1030(c)(2)(B)(ii). "The phrase in

5

furtherance means with the intent to help, advance, move forward, promote or facilitate" the conspiracy. *United States v. Moran-Toala*, 726 F.3d 334, 338-40 (2d Cir. 2013) (noting that neither party objected to the district court's jury instruction, although remanding the case based on an incorrect supplemental instruction). The Court concludes that these definitions of "in furtherance" are sufficiently similar to consider them definitions of the term "to further." "To further" means to help, advance, move forward, promote or facilitate.

The evidence at trial, viewed in the light most favorable to the government, and drawing all reasonable inferences in favor of the government, was sufficient to establish that Defendant killed Campbell to further his narcotics trafficking enterprise. Five of Defendant's drug customers testified that he sold them and other customers crack, heroin and/or fentanyl. (Tr. at 37, 44, 46, 50-51, 75, 105, 109-110, 131, 204, 213, 215). Several of these customers assisted Defendant in selling narcotics. (*Id.* at 45-46, 115, 133-134, 215). Defendant kept the drugs in a briefcase or at his apartment in Carmel, New York. (*Id.* at 50-51, 78, 117, 132-133). Defendant used a scale in his pocket to weigh the crack he sold. ((*Id.* at 69, 137, 172, 223). Defendant generally sold one-fifth to one-half grams of crack to these customers. (*Id.* at 46, 61, 75, 132, 215).

According to the government's primary witness, Greg Garland, Defendant killed Campbell after she stole drugs from him. Defendant informed Garland that he killed Campbell after he caught her stealing crack from his dresser. (*Id.* at 226). Twice on the same night, while smoking with Campbell at his apartment, Defendant placed crack in the dresser drawer in his bedroom, went to the bathroom and when he returned all or some of the crack was missing. (*Id.* at 229). After Defendant confronted Campbell "he stopped her from screaming." (*Id.* at 229-230). The narcotics in the dresser drawer was a portion of the narcotics Defendant kept at home to sell to his customers. There was no evidence at all to suggest the drugs in the dresser were for personal use only. The

6

medical examiner who conducted Campbell's autopsy testified that Campbell died from strangulation. (*Id.* at 482). Following Campbell's death, Defendant brought Garland to his apartment so that he could help him dispose of the body in North Carolina. (*Id.* at 226). At the apartment, Defendant lifted a blanket on the floor covering Campbell's body and told Garland: "there's the culprit." (*Id.* at 227).

Defendant argues that there was insufficient evidence to establish that he killed Campbell to further his narcotics business because: (1) there was scant evidence about the purpose of the murder and scope of his drug enterprise; (2) the evidence failed to establish that Cambell stole crack from his narcotics enterprise as opposed to crack for his personal use; (3) there was no evidence about the quantity of drugs stolen; and (4) an impulsive murder, rather than a planned murder, cannot be undertaken for the specific purpose of furthering narcotics trafficking.[3] (Doc. 91 at 1, 8-11). Defendant's arguments are unavailing.

Defendant admits that the motive for Campbell's murder, according to Garland's testimony, was her stealing crack from his apartment. (Doc. 91 at 8). A drug dealer who commits murder in retaliation for the theft of drugs or drug proceeds engages in conduct in furtherance of and to further a narcotics business. The jury here so concluded on substantial evidence. *See United States v. Campbell*, 850 F. App'x 102, 107 (2d Cir. 2021) (affirming conviction under 18 U.S.C. §§ 924(j) and 924(c)(1)(A) because a jury could have rationally found that the defendant "participated in the shooting of [the victim] with knowledge that the murder was in furtherance of [the] marijuana conspiracy—namely, as punishment for his attempted robbery of [the] Stash House and to send a message that such affronts to his marijuana operation would not be tolerated");

---

[3] Defendant cites no binding case law or otherwise, and the Court is not aware of any, holding that an impulsive murder cannot be undertaken to further Defendant's narcotics trafficking business.

*United States v. Santos*, 541 F.3d 63, 72 (2d Cir. 2008) (affirming drug-related murder conviction under 21 U.S.C. § 848(e)(1)(A) and noting that "[v]iolence [such as a murder can] further[] [the goals of a drug] conspiracy . . . by sending the message that those suspected of stealing from the conspiracy w[ill] be treated harshly"); *United States v. Jordan*, No. 20-CR-00305, 2025 WL 3684876, at *7 (E.D.N.Y. Dec. 19, 2025) (denying Rule 29 motion for convictions under 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 924(j) because courts have found that "a threat to the defendant's drug proceeds or supply constitute[] a motive sufficient to satisfy § 848(e)(1)(A)'s nexus requirement").

Defendant next argues that: (i) there was no evidence of the amount of drugs that Campbell stole, although the amount presumably was small; (ii) there was no evidence that Defendant stored drugs for his narcotics business in his dresser drawer; and (iii) it was equally plausible that Defendant killed Campbell in retaliation for stealing drugs from his personal consumption stash rather than his business inventory. (Doc. 91 at 8-10). A jury could reasonably infer that Defendant killed Campbell in retaliation for her stealing drugs from his narcotics enterprise rather than for his personal use. Defendant kept drugs at his residence and would sell a relatively small amount of drugs to his customers – as little as one-fifth of a gram of crack. (Tr. at 46, 50-51, 61, 75, 132-133). Defense counsel admitted during his summation that the witnesses described Defendant "as someone who sold small amounts of drugs." (Tr. at 656). Garland testified that Campbell stole crack in Defendant's house that Defendant placed in a dresser drawer in his bedroom. (*Id.* at 226, 229). Therefore, the jury could easily conclude that the crack Campbell stole was intended for Defendant's narcotics enterprise. "Even assuming that [Defendant] has posited a plausible counter-interpretation of the evidence, the jury was not compelled to accept it where, as here, there was sufficient evidence to support the government's interpretation of the evidence." *United States v.*

8

*Mason*, 479 F. App'x 397, 399 (2d Cir. 2012). It is the role of the jury, not the Court, to choose among competing inferences that can be drawn from the evidence. *See United States v. Varanese*, 417 F. App'x 52, 55 (2d Cir. 2011).

Viewing the evidence in its totality, in the light most favorable to the government, and crediting every inference that could have been drawn in the government's favor, the evidence introduced at trial cannot be said to have been insufficient to support the jury's guilty verdict on Count One of the Indictment. Accordingly, Defendant's request to set aside the jury's guilty verdict and enter a verdict of acquittal on Count One is denied.

## CONCLUSION

For the foregoing reasons, Defendant's post-trial motion is DENIED.

The Clerk of Court is respectfully directed to terminate the pending motion: Doc. 91.

**SO ORDERED.**

Dated: White Plains, New York
      April 8, 2026

_____
Philip M. Halpern
United States District Judge

9